UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARMADA OIL & GAS COMPANY, INC.,

       Plaintiff,

vs.

Case No. 06-CV-10269
HON. GEORGE CARAM STEEH

EPPCO, INC., et al.,

       Defendants.

_____/

ORDER DENYING WITHOUT PREJUDICE DEFENDANT RAY FAKHOURY'S MOTION FOR CONTEMPT (#32); DENYING WITHOUT PREJUDICE PLAINTIFF ARMADA'S MOTION TO SHOW CAUSE (#34) AND MOTION FOR CONTEMPT (#35); GRANTING PLAINTIFF ARMADA'S MOTION FOR RELIEF FROM THE COURT'S MAY 17, 2006 ORDER (#42), AND; SETTING ASIDE MAY 17, 2006 ORDER EFFECTIVE AUGUST 17, 2006

Plaintiff Armada Oil & Gas Company, Inc., moves for relief from this court's May 17, 2006 Order granting defendant Ray Fakhoury preliminary injunctive relief under 15 U.S.C. § 2805(b)(2) of the Petroleum Marketing Practices Act ("PMPA"). Defendant Ray Fakhoury moves to hold Armada in contempt of the May 17, 2006 Order. Armada moves to hold the defendants in contempt of the court's April 10, 2006 Order granting Armada preliminary injunctive relief. For the reasons set forth below and at an August 17, 2006 hearing on the motions, Armada's motion for relief from the May 17, 2006 Order will be GRANTED. The parties' competing motions for findings of contempt will be DENIED, without prejudice, and will be subsumed with the issues to be presented at trial.

I. Background

Armada filed a First Amended Complaint on February 21, 2006 alleging it took an

assignment of rights from non-party British Petroleum ("BP") on May 17, 2005 as to 85 Dealer Supply Agreements, under which Armada acts as a "jobber" supplying BP petroleum products to various retail dealers, and the dealers are obligated to advertise and sell only BP and Amoco products.  Defendants Ray and Hakim Fakhoury allegedly own and/or operate one or more of the five retail dealerships which are the subject of this lawsuit, either individually or through defendants R&R Enterprises and Canton Holdings, LLC.  All five dealerships are located in Michigan, and have been referred to by the parties as the Wyandotte Station, Trenton Station, Canton Station[1], Ford Station, and Lincoln Park Speedy Mart Station.  Armada alleges defendants EPPCO, Inc. and Future Fuels of America, LLC have been supplying competitor Marathon Oil products to the Stations since August 2005, and that the Stations have been selling these products to the public using BP's and Amoco's trademarks.  Consistent with the parties' recognition that the Dealer Supply Agreements for the Wyandotte Station, Trenton Station, and Lincoln Park Speedy Mart Station had been terminated, the court ordered the defendants on April 10, 2006 to "de-brand" these Stations of BP and Amoco trademarks.  The Ford Station continued to operate as a BP dealership under an August 14, 2003 "Dealer Lease and Supply Agreement" executed by defendant Ray Fakhoury as "Dealer."  The April 10, 2006 Order provides:

> 2. The Defendant(s) owning and/or operating [the Ford Station] shall permit Plaintiff and/or its agent(s) to access the premises and conduct inspections as provided in the Dealer Lease and Supply Agreement in connection with said gasoline station.

---

[1] At the August 16, 2006 hearing, the parties referred to the Canton Station as the "Cherry Street Station."  For purposes of consistency and clarity, the court will continue to apply the moniker "Canton Station."  See April 10, 2006 and May 17, 2006 Orders.

On April 12, 2006, the court retained federal subject matter jurisdiction over Armada's trademark infringement claims and the defendants' PMPA counterclaims, and dismissed without prejudice the parties' state law claims and counterclaims in deference to ongoing state court proceedings.

Armada moved for additional injunctive relief with respect to the Canton Station a month later, on May 12, 2006, asking that the court enjoin the Canton Station from selling Marathon products until the Station was "de-branded" of BP and Amoco trademarks. Defendant Ray Fakhoury moved three days later, on May 15, 2006, for an injunction requiring Armada to continue making fuel deliveries to the Ford Station.  Following an expedited May 16, 2006 hearing, the court issued a May 17, 2006 Order denying Armada's motion for injunctive relief, and granting in part Ray Fakhoury's motion for injunctive relief pursuant to 15 U.S.C. § 2805(b)(2) of the PMPA on findings of the existence of serious questions going to the constructive termination of the Ford Station's August 14, 2003 "Dealer Lease and Supply Agreement."  The May 17, 2006 Order provides:

> IT IS ORDERED that plaintiff Armada shall deliver as ordered petroleum products to defendant Fakhoury's station located at 41345 Ford Road, Canton, Michigan ("Ford Station"), at a commercially reasonable price, and defendants shall pay on delivery and document such ordered products and deliveries;
>
> IT IS FURTHER ORDERED that plaintiff Armada shall release customary and reasonable credits to the defendants for regular credit card purchases, providing that Armada shall release such credits to the defendants for application toward Ford Road station petroleum product purchases immediately after British Petroleum releases the same credits to Armada; plaintiff Armada shall act reasonably to facilitate the release of such credits;
>
> IT IS FURTHER ORDERED that this Order shall remain in effect until further order of the Court.

On June 20, 2006, defendant Ray Fakhoury filed a motion to hold Armada in

contempt of the May 17, 2006 for refusing to deliver fuel to the Ford Station, refusing to honor $100,000.00 of "customary and reasonable credits" owing to the Ford Station, and refusing to provide fuel invoices and access to an Armada internet website for the purpose of preventing Ray Fakhoury from determining whether fuel is being sold at a "commercially reasonable price."  As a contempt remedy, Fakhoury seeks an order requiring Armada to make fuel deliveries to the Ford Station, permitting credits to be paid directly to the Ford Station from BP, thereby by-passing Armada, and permitting the Ford Station to purchase fuel from another supplier.  On June 23, 2006, Armada filed separate show cause and contempt motions to hold the defendants in contempt of the April 10, 2006 Order for refusing to allow Armada Sales Manager Ron Hacker to sample fuel at the Ford Station on June 21, 2006 on suspicion that the Ford Station was purchasing fuel from a non-BP supplier, a practice known as "cross-hauling."  As a sanction, Armada seeks a $1,000.00 per day sanction as of June 21, 2006, or $61,000.00 as of the date of the August 16, 2006 hearing.  Armada filed a third motion on July 29, 2006 seeking relief from the May 17, 2006 Order on the basis that Armada provided July 7, 2006 notice to Ray Fakhoury that the "Dealer Lease and Supply Agreement" is terminated consistent with the PMPA and the defendants' alleged acts of fraud relative to $59,000.00 in BP pre-paid cards ("BP Card"), refusing to pay rent, closing the Ford Station for an unreasonable period of time, blaming Armada for the Ford Station's "price-gouging," and refusing Hacker access to the Ford Station.  The parties' cross-motions for contempt and Armada's motion for relief from the May 17, 2006 Order are before the court.

## II.  Armada's Motion for Relief from May 17, 2006 Order

On motion and upon terms that are just, a court may relieve a party from an order

4

if it is no longer equitable that the order have prospective application. Fed. R. Civ. P. 60(b)(5). A district court also enjoys inherent power to dissolve preliminary injunctive relief, exercising the same discretion it exercised in granting the injunctive relief. Toledo Area AFL-CIO Counsel v. Pizza, 907 F. Supp. 263, 265 (N.D. Ohio 1995) (citing Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 354 (10th Cir.1986); Sierra Club v. United States Army Corps of Engineers, 732 F.2d 253, 256 (2d Cir.1984); Museum Boutique Intercontinental, Ltd. v. Picasso, 880 F.Supp. 153, 161 (S.D.N.Y.1995)).

The court's May 17, 2006 Order was issued pursuant to 15 U.S.C. § 2805 of the PMPA, authorizing preliminary injunctive relief if the franchisee shows that: (1) the franchise has been terminated; (2) "there exist serious questions going to the merits to make such questions a fair ground for litigation" and; (3) "the hardships imposed upon the franchisor by the issuance of [a preliminary injunction] will be less than the hardship upon such franchisee if [a preliminary injunction] were not granted." 15 U.S.C. § 2805(2). The court concluded that the defendants had presented serious questions going to the merits of their PMPA counterclaim alleging that Armada had wrongfully and constructively terminated the Ford Station franchise by refusing to make fuel deliveries upon the tender of payment. Neither side presented persuasive evidence regarding the propriety of the defendants' claimed $100,000.00 in credits owing by Armada, prompting the court to issue the May 17, 2006 preliminary injunctive relief to maintain the status quo.

Armada now proffers evidence that 590 $100.00 BP Cards were activated on May 6, 2006 at the Canton Station within a two-hour period and processed at the Ford Station the same day for $59,000.00 in credits owing from Armada to the Ford Station. BP Cards

are available for customer purchase in $25.00, $50.00, and $100.00 denominations, and may be used toward the purchase of fuel, food, convenience items, automotive parts, and car washes, but are not redeemable for cash or to purchase money orders. Armada's July 19, 2006 Exhibit 7, at 1, 5. Defendants admit that this May 6, 2006 transaction took place, but argue that the Canton Station simply transferred $59,000.00 in credits owing to the Canton Station to the Ford Station, and therefore there was no fraud.

15 U.S.C. § 2802(b) of the PMPA provides in part:

(b) Precondition and grounds for termination or nonrenewal

\* \* \*

(2) For purposes of this subsection, <u>the following are grounds for termination of a franchise</u> or nonrenewal of a franchise relationship:

(A) <u>A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship</u>, if the franchisor first acquired actual or constructive knowledge of such failure--

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.

(B) <u>A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise</u>, if--

(I) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; and

(ii) such failure thereafter continued within the period which began not more than 180 days before the date notification of termination or nonrenewal was given pursuant to section 2804 of this title.

(C) <u>The occurrence of an event which is relevant to the franchise relationship</u>

6

<u>and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable</u>, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence--

(I) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.

(emphasis added). 15 U.S.C. § 2802(c) of the PMPA lists twelve examples of "an event which is relevant to the franchise relationship and as a result of which termination of the franchise . . . is reasonable" under § 2802(b)(2)(C), the first of which is "fraud or criminal conduct by the franchisee relevant to the operation of the marketing premises." This list of events is not exhaustive, however, as "Congress delegated to the courts the discretion to determine what events, other than those enumerated, constitute an event which is relevant to the franchise relationship as a result of which termination or non-renewal is reasonable." PDW Midwest Refining, L.L.C. v. Armada Oil and Gas Co., 305 F.3d 498, 507-08 (6th Cir. 2002). "A franchisor needs to provide only one valid reason for termination under the PMPA." Id. at 508.

The August 14, 2003 "Dealer Lease and Supply Agreement," executed by defendant Ray Fakhoury as "Dealer," states:

> 8. **Payment Methods Including Credit Cards**
>
>   (a) Lessor may from time to time endorse and sponsor specific proprietary and third party payment methods including certain credit cards, charge cards, fleet cards, debit cards, pre-paid cards and the like (collectively "Payment Methods") for use at facilities selling Lessor's products. . . . . If Lessor does sponsor a Payment Methods Program ("Payment Methods Program"), Dealer agrees that the Lessor's proprietary Payment methods and all third party Payment Methods specified by Lessor will be accepted at each payment

7

>point (including card-readers-in-dispensers) at the Facility.  <u>Dealer will strictly comply with the operating rules, terms, and conditions of any Payment Methods Program that Company may sponsor, and distribute through any manuals, bulletins, or other forms of written or electronic communications, as issued and amended from time to time.</u>  Lessor has the right to charge back to Dealer sales transaction amounts made by Dealer's customers up to and including 6 months from the date of the transaction.  Dealer must maintain copies of all sales drafts for 6 months from the date of transaction.

Armada's July 19, 2006 Exhibit 1, at 4 (emphasis added).  The "Dealer Lease and Supply Agreement" also provides:

> 19. **Grounds for Termination and Nonrenewal**
>
> (a) Breach by Dealer of any provision of this Agreement.
>
> \*   \*   \*
>
> (d) Commission by Dealer or any of Dealer's employees or agents of any deceptive, fraudulent, illegal, immoral, or other improper act relevant to the operation of the business on the facility which is detrimental to Lessor or to any member of the public, including without limitation: (1) participation in any fraudulent or improper use of any credit card or motor club membership card issued or honored by Lessor; (2) tampering with pump meters, misrepresentation of pump meter readings and/or the reporting thereof, and the like; (3) violation of any consumer protection law or regulation; and (4) purchase by Dealer, without Lessor's consent, of credit card tickets from other dealers covering sales of Lessor's products.
>
> \*   \*   \*
>
> (k) Failure of Dealer to exert good faith efforts to carry out the provisions of this Agreement, and/or the obligations and responsibilities under any applicable franchise relationship.

Armada's July 19, 2006 Exhibit 1, at 10.

Defendants' admissions that they activated 590 $100.00 BP Cards at the Canton Station on May 6, 2006, using credits allegedly owed by Armada to the Canton Station, and then processed these same BP Cards on the same day at the Ford Station, thereby representing to Armada that the Ford Station was now owed $59,000.00 for customer credit

8

purchases, constituted the "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise . . . is reasonable." 15 U.S.C. § 2802(b)(2)(C); PDW Midwest Refining, 305 F.3d at 507-08. Nowhere within the operating rules, terms, and conditions of the BP Card program is a franchisee such as Ray Fakhoury authorized to accept a transfer of credits from another franchisee as was attempted on May 6, 2006. See Armada's July 19, 2006 Exhibits 7-8. The May 6, 2006 BP Card transactions of $59,000,00 were clearly not in strict compliance of the BP Card program, constituting a breach of paragraph 8(a) of the Ford Station "Dealer Lease and Supply Agreement," and thus serve as alternative grounds for termination of the Ford Station franchise under 15 U.S.C. § 2802(b)(2)(A). Still further, the improper May 6, 2006 BP Card transactions evidence a lack of good faith effort on the part of the Ford Station to carry out the provisions of the BP Card program in violation of paragraphs 19(d) and 19(k) of the "Dealer Lease and Supply Agreement," warranting termination of the franchise under 15 U.S.C. § 2802(b)(2)(B). Although the BP Card transactions may fail to constitute actionable fraud in the absence of evidence that Armada acted upon the transaction to its detriment and suffered a consequential injury[2], fraud is not a prerequisite in finding that termination of the Ford Station franchise is proper under § 2802(b)(2)(A), (b)(2)(B), and/or (b)(2)(c). PDW Midwest Refining, 305 F.3d at 507-08. Any one of these reasons is a valid reason for termination of the Ford Station franchise under the PMPA. Id. at 508. The court need not address Armada's additional arguments for termination premised on the alleged failure to pay rent, closing the Ford Station for an unreasonable time, blaming Armada for

---

[2] See Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813 (1976).

"price-gouging," or refusing to grant Hacker access to the Ford Station.

No serious questions remain as to the merits of Armada's July 7, 2006 termination of Ray Fakhoury's Ford Station "Dealer Lease and Supply Agreement." See 15 U.S.C. § 2805(2). It is no longer equitable for the May 17, 2006 Order to have prospective effect. Fed. R. Civ. P. 60(b)(5); Toledo Area AFL-CIO Counsel, 907 F. Supp. at 265. Armada's motion to set aside the May 17, 2006 Order will be granted, effective August 17, 2006.

### III. Cross-Motions for Contempt

A party must prove by clear and convincing evidence that the opposing party "violated a definite and specific order of the court requiring them to perform or refrain from performing a particular act or acts with knowledge of the court's order." Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996) (quoting N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 591 (6th Cir. 1987)). Intent to violate a court order is irrelevant. Rolex Watch, 74 F.3d at 720 (quoting In re Jaques, 761 F.2d 302, 306 (6th Cir. 1985)).

Defendants have failed to proffer clear and convincing evidence that Armada violated the court's May 17, 2006 Order. Armada was required to deliver fuel to the Ford Station in exchange for payment on delivery. It remains unclear whether the Ford Station was owed legitimate "customary or reasonable credits" sufficient to cover the cost of fuel deliveries, or whether defendants lacked sufficient credits and wrongfully refused to "pay on delivery." See May 17, 2006 Order. It is also unclear whether Armada refused to invoice the Ford Station. The May 17, 2006 Order did not specifically order Armada to continue granting the defendants access to Armada's website.

Even if defendants had proven by clear and convincing evidence that Armada refused to make fuel deliveries after being paid for such deliveries, the remedy sought by

defendant Ray Fakhoury would be overbroad. Although a district court enjoys both general equity powers and statutory authority under the PMPA to maintain the status quo of the parties to preserve the court's ability to render a meaningful decision after a trial on the merits, the court may not "alter the prior status of the parties fundamentally." Corbin v. Texaco, Inc., 690 F.2d 104, 105 (6th Cir. 1982) (quoting Warner Bros. Pictures v. Gittone, 110 F.2d 292, 293 (3d Cir. 1940)). Absent contentions of contractual fraud or mistake, a court cannot in equity alter the terms of a franchise agreement under authority of § 2805. Corbin, 690 F.2d at 105-106 (finding district court improperly ordered five-month reduction of rent from contractually required $1,453.00 monthly payment to $953.00 monthly payment, with the difference ordered to be paid into an escrow account). Defendant Ray Fakhoury's request for an injunction permitting credits to be paid directly to the Ford Station from non-party BP, and permitting the Ford Station to purchase fuel from another supplier, would improperly alter the fundamental terms of the parties' "Dealer Lease and Supply Agreement." Corbin, 690 F.2d at 105.

Armada in turn has likewise failed to proffer clear and convincing evidence that the defendants, and particularly Ray Fakhoury, refused to allow Armada Sales Manager Hacker access to the Ford Station fuel tanks on June 21, 2006. A question remains whether anyone with knowledge of the April 10, 2006 Order and authority to open the fuel tanks refused Hacker's request to inspect the tanks. Armada's requested $61,000.00 sanction is unsupported, and not well taken. Most importantly, fair consideration of the competing contempt motions requires a full development of the facts and testimony of the parties at the trial of this case.

## IV. Conclusion

Armada has demonstrated it is entitled to prospective relief from the May 17, 2006 Order. Neither Armada nor the defendants have supported their motions for contempt with requisite clear and convincing evidence. Defendants' counterclaim of a constructive termination of the Ford Station prior to July 7, 2006 remains viable. The parties' competing claims of contempt will be subsumed with the issues to be presented at trial, and remain subject to a clear and convincing evidentiary standard of proof. Accordingly,

Defendant Ray Fakhoury's motion for contempt is hereby DENIED, without prejudice. Armada's motion for order to show cause and motion for contempt are hereby DENIED, without prejudice. These issues may be at the trial of this case. Armada's motion for relief from the May 17, 2006 Order is hereby GRANTED. The court's May 17, 2006 Order is hereby SET ASIDE effective August 17, 2006.

SO ORDERED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  August 23, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on August 23, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk

12