UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARMADA OIL & GAS COMPANY, INC.,

      Plaintiff,

vs.                                    Case No. 06-CV-10269
                                      HON. GEORGE CARAM STEEH

EPPCO, INC., et al.,

      Defendants.

_____/

**ORDER GRANTING, IN PART, DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF PLAINTIFF'S LANHAM ACT CLAIMS (#64),
DENYING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
OF PLAINTIFF'S LANHAM ACT CLAIMS (# 65), AND
DISMISSING PLAINTIFF'S TRADEMARK INFRINGEMENT CLAIMS;
TAKING UNDER ADVISEMENT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
OF DEFENDANTS' PMPA COUNTERCLAIMS (# 69) AND THE REMAINDER OF
THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT OF
PLAINTIFF'S LANHAM ACT CLAIMS (#64, #65);
DISMISSING PMPA COUNTERCLAIMS ALLEGED ON BEHALF OF
THE WYANDOTTE, TRENTON, LINCOLN PARK, AND CANTON STATIONS, AND;
ORDERING BRIEFING ON COLORADO RIVER ABSTENTION DOCTRINE**

Plaintiff Armada Oil & Gas Company, Inc., moves for summary judgment of its claims under the Lanham Act, 15 U.S.C. § 1051 et seq.., and the defendants' counterclaims under 15 U.S.C. § 2805(b)(2) of the Petroleum Marketing Practices Act ("PMPA"). Defendants move for summary judgment of Armada Oil's Lanham Act claims. A hearing was held on the motions on September 13, 2007.

The circumstances underlying this lawsuit have been set forth in previous Opinions and Orders. Armada Oil took an assignment of rights from non-party British Petroleum/Amoco ("BP") on May 17, 2005 as to 85 Dealer Supply Agreements, acquiring

the rights to provide BP products to certain retail petroleum service stations, including the five Michigan service stations which are the subject of this lawsuit: the Wyandotte Station, Trenton Station, Lincoln Park Speedy Mart Station, Canton Station, and Ford Station. Defendants Ray and Hakim Fakhoury own and/or operate the Stations, and non-party Mohamad Fakhoury manages all but the Ford Station. Armada Oil alleges the Stations were contractually obligated to advertise and sell only BP/Amoco products, and that defendants EPPCO, Inc. and Future Fuels of America, LLC sold Marathon Oil products to the Stations. Defendant Hakim Fakouri allegedly purchased EPPCO's Marathon Oil supply obligations in December 2005.

On April 12, 2006, the court dismissed the parties state law claims and counterclaims without prejudice as predominating over the federal claims and counterclaims, and in recognition of a related state court lawsuit. The court retained jurisdiction over Armada Oil's Lanham Act claims and defendants' PMPA counterclaims. These federal claims and counterclaims are the subject of the competing motions for summary judgment.

## I.  Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

2

must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).

### A.  Armada Oil's Lanham Act § 1114(1) Trademark Infringement Claims

Generally, a claim of trademark infringement must be brought by the "registrant," that is, the owner of the trademark. See 15 U.S.C. § 1114(1) (recognizing a trademark infringer "shall be liable in a civil action by the registrant"); Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154, 159 (1st Cir. 1977) (recognizing one exception under § 1114(1) - where one is granted an "exclusive license" by which the trademark owner agrees to exclude even himself from using the trademark in the licensee's territory); Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co., 339 F.Supp.2d 944, 959 (W.D. Mich 2004) (citing Quabaug and ICEE Distribs., Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 598-99 (5th Cir. 2003) for the proposition that "a licensee has no standing where the license is non-exclusive or the license does not equate to an assignment").  Armada Oil does not dispute that only a trademark owner or "exclusive licensee" may bring a § 1114(1) trademark infringement claim, or that non-party British Petroleum is the registrant and owner of the

trademarks at issue here. Instead, Armada Oil argues that it is an "exclusive licensee" upon applying six factors recognized in Bliss: (1) the licensee's power to exclude the licensor from using the mark; (2) whether the licensor retained exclusive ownership of the mark; (3) whether the license imposes geographical use restrictions; (4) whether the license requires the licensee to retain the quality of the mark or reserves to the licensor the right to monitor the quality of the licensee's products; (5) whether the license agreement is consistent with a full assignment; and (6) whether the license limits the licensee's right to enforce the mark against infringers.

Construing the pleadings and evidence in a light most favorable to Armada Oil, it is beyond all reasonable dispute that Armada Oil is not an "exclusive licensee" of the BP trademarks, and therefore lacks standing to pursue its § 1114(1) trademark infringement claims against the defendants. Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390. A May 17, 2005 "Assignment And Assumption Agreement" executed by BP and Armada Oil expressly states that BP "reserves all rights . . . including [BP's] rights to intellectual property or corporate identification property[.]" A "Branded Jobber Contract" executed by BP and Armada Oil on April 10, 2001 provides that Armada Oil "will be permitted to use, and will be permitted to allow the jobber/dealers and sub-jobbers it supplies with Products purchased under this Contract ('Jobbers-Marketers') to use -- on a *non-exclusive*, limited site specific basis at Approved Retail Sites -- certain and specifically designated [BP] trademarks, service marks, trade names, brand names, trade dress, logos, color patterns, color schemes, design schemes, insignia, image standards and the like (individually and collectively, 'Trade Identities') in connection with the advertising, distribution, and/or resale of the Products authorized by, supplied by and/or purchased from

[BP] under this Contract." (emphasis added). The "Branded Jobber Contract" also provides that BP retains the right "to revoke its prior approval to use certain or all of its Trade Identities at [an] Approved Retail Site, in which case [Armada Oil] will cease using or displaying, or cause its Jobber-Marketer to cease using or displaying, certain or all of [BP's] Trade Identities at that site, whatever the case may be." Still further, the "Branded Jobber Contract" states that "[BP] will have the irrevocable right to use any means necessary to remove, cover or obliterate the Trade Identities, including entering upon the relevant premises or filing a legal action, with [Armada Oil's] full and complete cooperation and at [Armada Oil's] expense." An April 10, 2001 "Trade Signage Agreement" executed by BP and Armada Oil reiterates that Armada Oil "will be permitted to display, and will be permitted to allow its Jobber-Marketers . . . to display - on a *non-exclusive*, limited, site specific basis at its Approved Retail Sites - Trade Identity Signage[,]" and that "[BP] will retain at all times, the right to determine what Trade Identity Signage will be used or displayed, and the manner of its use or display, at an Approved Retail Site and the right to restrict the use or display of certain Trade Identity Signage to certain Approved Retail Sites (or to certain locations at an Approved Retail Site)." (emphasis added). BP clearly retained the power to exclude Armada Oil from using the BP trademarks, retained the exclusive ownership of its trademarks, restricted Armada Oil's geographical use of the trademarks at Approved Retail Sites, and reserved the right to monitor the quality of Armada Oil's products to be sold in conjunction with the BP trademarks. See Bliss, 339 F.Supp.2d at 959. The license agreement did not constitute a full assignment of BP's trademarks to Armada Oil, did not grant Armada Oil exclusive use of the BP trademarks, and restricted Armada Oil's ability to enforce the BP trademarks. Id. Defendants are entitled to summary

5

judgment of Armada Oil's Lanham Act § 1114(1) trademark infringement claims because Armada Oil lacks standing as a registrant, owner , or "exclusive licensee" of the BP trademarks. 15 U.S.C. § 1114(1); Quabaug, 567 F.2d at 159; Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390.

### B. Armada Oil's Lanham Act § 1125(a) Unfair Competition Claims, Defendants' PMPA Counterclaim, and the Colorado River Doctrine

Armada Oil argues it is entitled to summary judgment of Lanham Act unfair competition claims it has alleged in Count I pursuant to 15 U.S.C. § 1125(a). Unlike a trademark infringement claim actionable only by the trademark owner and "exclusive licensees," a Lanham Act § 1125(a) unfair competition claim may be brought "by any person who believes that he or she is or is likely to be damaged by" the false designation of the origin of goods, or false description or representation of goods. 15 U.S.C. § 1125(a); Quabaug, 567 F.2d at 160. To recover damages under § 1125(a), the plaintiff must prove that "the buying public was actually deceived," Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 647 (6th Cir. 1982) (citing Skil Corp. v. Rockwell Int'l Corp., 375 F.Supp. 777 (N.D. Ill. 1974)), and that "the aggrieved party . . . suffered actual harm to the business." Quabaug, 567 F.2d at 161. Defendants argue that Armada Oil has not pleaded a § 1125(a) claim in Count I, and that Armada Oil has failed to proffer evidence that a customer was actually deceived or that Armada Oil suffered actual harm from such deception.

Armada Oil moves for summary judgment of the defendants' PMPA counterclaims which, at the hearing, defendants conceded are limited to the Ford Station. To prevail on the PMPA counterclaim, defendants must, as a threshold matter, prove that Armada Oil breached the franchise agreement. See Clark v. BP Oil Co., 137 F.3d 386, 390-91 (6th Cir.

6

1998); April Marketing & Distributing Corp., Inc. v. Diamond Shamrock Refining and Marketing Co., 103 F.3d 28, 30 (5th Cir. 1997). Defendants argue that Armada Oil breached the Ford Station's franchise agreement by: (1) over-charging for fuel; (2) failing to deliver fuel in a timely manner; (3) delivering non-BP branded fuels; (4) charging twice for a monthly rent; (5) withholding credit card credits; and (6) charging fees not authorized by the contract. Armada Oil denies any breach, and argues in the alternative that any such breach cannot support the PMPA counterclaims because the Ford Station retained the rights to use the BP trademark, remain on the premises, and purchase products from Armada Oil during the relevant time period.

The parties informed the court in their briefs and at the September 13, 2007 hearing that they have agreed to arbitrate their state law claims and counterclaims pending in state court. The Colorado River doctrine permits a court to abstain from exercising federal jurisdiction where considerations of judicial economy and federal-state comity justify abstention. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). The doctrine rests on "wide judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Romine v. Compuserve Corp., 160 F.3d 337, 339 (6th Cir. 1998) (quoting Colorado River, 424 U.S. at 96). Once it is determined that the state and federal proceedings are parallel proceedings, the court should consider the following factors on the facts of the case in deciding whether to abstain: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the plaintiff's federal rights; (7) the

relative progress of the two proceedings; and (8) the presence or absence of concurrent jurisdiction. Romine, 160 F.3d at 340-41.

The parties' state arbitration proceedings are clearly parallel to the instant federal proceedings. Armada Oil's state law claims of breach of contract and unfair competition, and defendants' state law breach of contract counterclaims, are currently the subject of state court arbitration. To prevail on their PMPA counterclaims here, defendants must initially prove a breach of contract, a matter of state law. In deference to considerations of judicial economy, federal-state comity, and the comprehensive disposition of litigation, the court will take under advisement the remaining motions for summary judgment as to Armada Oil's federal unfair competition claims and defendants' federal PMPA counterclaims to facilitate briefing of the Colorado River abstention issue first raised by the court at the September 13, 2007 hearing.

## II. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is hereby GRANTED, IN PART, as to plaintiff Armada Oil's Lanham Act trademark infringement claims as alleged in Count I of Armada Oil's First Amended Complaint. Armada Oil's motion for summary judgment of its Lanham Act claims is hereby DENIED, IN PART, to the extent Armada Oil moved for summary judgment of its Lanham Act trademark infringement claims. Armada Oil's trademark infringement claims are hereby DISMISSED with prejudice. By agreement of the parties, defendants' PMPA counterclaims relative to the Wyandotte Station, Trenton Station, Lincoln Park Speedy Mart Station, and Canton Station are hereby DISMISSED with prejudice. Armada Oil's motion for summary judgment and defendants' motion for summary judgment as to Armada Oil's Lanham Act unfair

8

competition claims under § 1125(a), and Armada Oil's motion for summary judgment as to defendants' Ford Station PMPA counterclaims, are hereby TAKEN UNDER ADVISEMENT. The parties are hereby ORDERED to file supplemental briefs addressing the <u>Colorado River</u> abstention doctrine issue on or before October 26, 2007, to which responses may be filed on or before November 12, 2007.

 SO ORDERED.

Dated: September 17, 2007

          <u>s/George Caram Steeh</u>
          GEORGE CARAM STEEH
          UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 17, 2007, by electronic and/or ordinary mail.

<u>s/Marcia Beauchemin</u>
Deputy Clerk